IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

TROIE L. ROY                                                                                          PLAINTIFF

v.                                                                    CIVIL ACTION NO. 1:03cv692-WJG-JMR

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY                                          DEFENDANT

REPORT AND RECOMMENDATION

Troie L. Roy ("Roy") brings this action pursuant to 42 U.S.C. 405(g) of the Social Security Act, to obtain judicial review of a "final decision" of the Commissioner of Social Security ("Commissioner") denying her claim for a period of disability and disability benefits.

On April 2, 2001, Roy applied for supplemental security income and for disability insurance benefits pursuant to Title II of the Social Security Administration Act. (Tr. 347-349). Roy claimed that depression and hyperthyroidism caused her inability to work since August 4, 2001. (Tr. 62). Roy's application was denied initially on August 16, 2001, (Tr. 325) and upon reconsideration on October 10, 2001. (Tr. 334-336). Thereafter, Roy requested a hearing and the case was heard by an Administrative Law Judge ("ALJ") on December 4, 2002. (Tr. 35.).

On February 21, 2003, the ALJ, applying the five step analysis set forth under 20 C.F.R. § 404.1520, determined that Roy was not disabled. (Tr. 15-23). Roy sought Appeals Council review of the decision. (Tr. 9-11). On June 6, 2003, the Appeals Council issued a Notice of Action denying Roy's request for review. On August 8, 2003, Roy filed her Complaint [1-1] seeking review of the Commissioner's final decision in the United States District Court for the Southern District of Mississippi.

On December 2, 2003, this Court entered an Order [6-1] remanding this matter back to the

Administrative Law Judge level.[1]  This Order administratively closed the case until further order from the Court.  On January 13, 2004, the Appeals Council, pursuant to the Court's Order [6-1], remanded the matter for another hearing (Tr. 341-342).  Roy's claim was reheard by the ALJ on July 15, 2004.  The ALJ issued a decision on October 18, 2004, concluding that Roy was not disabled. (Tr. 382, 312-319 ).

On June 28, 2006 Defendant filed a Motion [7-1] to Reopen the case. In the Motion, Defendant stated that following the Court's Order [6-1], the Commissioner reconstructed and certified the administrative record.  The Defendant requested this Court to order the reopening of the case so that Defendant could file an answer to Roy's complaint.  On August 2, 2006, this Court entered an Order [8-1] granting Defendant's Motion [7-1] to Reopen the case.  Subsequently, Defendant Answered [9-1] Roy's Complaint and Roy filed her Motion [12-1] for Reversal or in the Alternative, Motion to Remand.  The Defendant Responded [14-1] to Roy's Motion and requested that the decision of the Commissioner be affirmed. The Court finds that this case is now ripe for review under section 205(g) of the Social Security Act § 405(g).

## FACTS

Roy, born September 13, 1975, was 45 years old at the time of the ALJ's decision.  (Tr. 16). Roy is a graduate from Biloxi High School with an Associates Degree in Nursing (two years of college). (Tr. 38).  Roy's past work experience consists of a retail sales clerk, nurse supervisor, and

---

[1] The Court remanded this action under sentence six of 42 U.S.C. § 405(g) for the purpose of including in the record relevant documents, such as benefit applications, earning records and procedural documents that were inadvertently omitted.  The Court also remanded this action to afford Roy the opportunity to object to the admission of any relevant documents and to request a hearing.

registered nurse. (Tr. 16). A vocational expert (VE) was consulted to determine the type of skill and labor associated with these occupations. (Tr. 56). The VE described the work activity of a registered nurse as skilled medium level work, the work activity of a nurse supervisor as skilled light level work, and the work of a retail sales clerk as semi-skilled light work. (*Id.*).

Roy claims to suffer from several diseases that cause her inability to work. (Tr. 62). The diseases of central concern are hyperthyroidism (Graves disease) (Tr. 147, 242, 284) and depression (Tr. 228). Roy alleges that these aliments were triggered by the circumstances associated with her son's conviction of murder of a Vietnamese man. (Tr. 43). Roy now believes that the Vietnamese Mafia is after her, in light of her son's role in the Vietnamese man's death. (Tr. 42). Roy claims that this threat is what lead to her mental illness and inability to work. (*Id.*). Roy's drug habits, especially her abuse of crystal meth, resulted in her family admitting her into Memorial Behavioral Health on October 13, 2000. (Tr. 44). Roy was discharged on October 23, 2000, with a diagnosis of polysubstance abuse. (Tr. 104).

After her release, Roy remained without work. Roy filed for supplemental security income on March 31, 2001 and for disability benefits on April 2, 2001. (Tr. 347-349). Roy claimed to have been disabled since August 4, 2000. (Tr. 15). Roy sought treatment for her alleged disabilities from Richard Gorman, M.D. on March 26, 2001. (Tr. 146). At this time, Roy was 5' 4" and 145 pounds. (*Id.*). Dr. Gorman diagnosed Roy with hyperthyroidism and depression. (Tr. 147). In his notes he stated that Roy was not able to distinguish reality form non-reality. (*Id.*). Dr. Gorman further found that Roy was experiencing mood swings and that her depression was improved. (*Id.*). Due to Roy's depression improving, Dr. Gorman continued to prescribe her Celexa. (*Id.*).

The Commissioner requested a second medical opinion regarding Roy's conditions. On

August 6, 2001, Roy fulfilled these wishes by undergoing a consultative medical examination with Larry Pickel, Ph.D. (Tr. 173). Dr. Pickel found that this case was tough to assess due to the difficulty in separating which symptoms resulted from Roy's history of drug abuse and which symptoms resulted from the claimant's hyperthyroidism. (Tr. 175). During the evaluation, the doctor noted that Roy's insight appeared to be fair, and he estimated her intelligence to be average. (Tr. 175). With respect with the Vietnamese Mafia threats, Dr. Pickel found that this may have caused Roy to suffer some trauma, but again he said it is difficult to assess. (*Id.*). At the conclusion of the evaluation, the doctor strongly recommended Roy be subjected to ongoing psychotherapy. (Tr. 176).

On August 20, 2001 Roy went to see Sarkar Aleem, M.D. for psychiatric treatment with stress and mood disorder. (Tr. 236). During this treatment, Roy's thought process was deemed logical (Tr. 239), her thought content was found to be within normal limits (*Id.*), and her attention and orientation were presumed to be intact (Tr. 240). On October 25, 2001, Dr. Aleem reported that Roy's calmness had increased with her medication. (Tr. 235). Dr. Aleem's assessment was depression and hyperthyroidism. (*Id.*). Roy continued to see Dr. Aleem for many follow-up visits, with the last one taking place on April 29, 2004. (Tr. 225-234, 262-271). During these follow- up visits, the doctor found that Roy's thought process continued to be logical and she was cognitively appropriate. (*Id.*).

Roy went back to Dr. Gorman on April 3, 2003 for a follow-up on her conditions of memory loss, depression, and Graves' disease. (Tr. 284). Roy's weight was a reported 270 pounds, which is a 130 pound increase from her visit a year prior. (*Id.*). Roy reported to be "not doing well," as she was suffering from increased memory loss and increased dizziness. (*Id.*). Roy claimed that the

4

dizziness was worse when walking or standing. (*Id.*). Dr. Gorman diagnosed Roy as having prior memory loss, depression, cognitive impairment, Thyroid disease, and decreased concentration. (*Id.*).

## STANDARD OF REVIEW

On review, the ALJ's determination that a claimant is not disabled will be upheld if the findings of fact upon which it is based are supported by substantial evidence on the record as a whole, and it was reached through the application of proper legal standards. 42 U.S.C. § 405(g); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). The United States Supreme Court defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," being "more than a scintilla, but less than a preponderance." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

All evidentiary conflicts are resolved by the Commissioner, and if substantial evidence is found to support the decision, then the decision is conclusive and must be affirmed, even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). On appeal, the court may not re-weigh the evidence, try the case *de novo*, nor substitute its own judgment for that of the Commissioner, *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds the evidence preponderates against the decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

## ANALYSIS

Pursuant to 20 CFR §§ 404.1520 and 416.920, a five-step evaluation must be performed in order to determine whether the claimant is disabled. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). Under the act, this five-step evaluation requires the following sequential analysis:

(1). If the claimant is performing substantial gainful work, she is not disabled.

(2.) If the claimant is not performing substantial gainful work, her impairment(s) must be

"severe" before she can be found to be disabled.

(3.) If the claimant is not performing substantial gainful work and has a "severe" impairment (or impairments) that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment (or impairments) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4, the claimant is presumed disabled without further inquiry.

(4.) If the claimant's impairment (or impairments) does not prevent her from performing her past relevant work, she is not disabled.

(5.) Even if the claimant's impairment (or impairments) prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her residual functional capacity and vocational factors, she is not disabled.

This is a sequential test. Therefore, if the claimant is performing substantial gainful work, thereby satisfying step one and making her not disabled, the evaluation ceases and does not proceed to step two. In order to reach step four in the sequential analysis, the plaintiff must prove she became disabled as defined by the Act. 42 U.S.C. § 416(i)(1)(A); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 147 (1987). While the burden of proof is on the plaintiff at all times, the burden of production shifts to the Commissioner at the fifth step to show the existence of work in the national economy which Plaintiff can perform. *Yuckert*, 482 US. at 146 n.5, 147.

The ALJ found that Roy satisfied the first prong of the sequential analysis by showing that she has not been involved in substantial gainful activity since her alleged onset date. (Tr. 313). With respect to the second and third prongs of the analysis, the ALJ stated that

The medical evidence indicates that the claimant [Roy] has hyperthyroidism and depression, impairments that are 'severe' within the meaning of the Regulations but not 'severe' enough to meet or medically equal, either singly or in combination to one of the impairments listed in Appendix 1, Subpar P, Regulations No. 4.

(Tr. 315). Because Roy's impairments are not severe enough to meet or equal the ones listed in the

statute, she must satisfy the remaining two steps of the analysis in order to receive disability benefits. (Tr. 313)

At this stage in the analysis, the ALJ must determine the claimant's residual functional capacity (RFC). (Tr. 315). This is known as the type of work the claimant can do despite her impairments. 20 C.F.R. § 404.1545. Although Roy alleged that her impairments severely limited her ability to preform work, the ALJ concluded that these complaints were not "born out by the evidence." (Tr. 315). The ALJ also stated that Roy's impairments which were "born out by the evidence" could be effectively treated with medication. (*Id.*) After considering all the credible medical evidence, the ALJ found that Roy retains the RFC for simple and unskilled sedentary work. (Tr. 316).[2]

In the forth step of the analysis, the ALJ compared his RFC findings with the VE's findings of Roy's past relevant work to determine if she was capable of performing her past relevant work. (Tr. 316). Roy's past work experience consists of a retail sales clerk, nurse supervisor, and registered nurse. (Tr. 16). A VE was consulted to determine the type of skill and labor associated with these occupations. (Tr. 56). The VE testified that Roy's past work as a registered nurse was medium and skilled, her work activity as a registered nurse was skilled light level work, and her work as a retail sales clerk was semi-skilled light work. (Tr. 316). This comparison showed that the demands of Roy's past relevant work exceed the demands of her RFC, so the inquiry proceeded to the final step. (*Id.*). Thus, the ALJ proceeded to the fifth prong of the analysis.

---

[2]The statute defines unskilled work as work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. 20 C.F.R. § 404.1468(a). Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. 20 C.F.R. § 404.1567(a).

As noted above, the burden of production shifts to the Commissioner at the fifth step to demonstrate that the claimant can nonetheless perform alternate jobs. *See Anderson v. Sullivan*, 887 F.2d 630, 632 (5th Cir. 1989). If the Commissioner meets the burden of showing alternate jobs, the burden shifts back to the claimant to show that he is unable to perform alternate work. *Id.* at 632-33. On the alleged onset date, Roy was 42 years old. (Tr. 21). Her age is defined by the regulations as a younger individual. *See* CFR §§ 404.1562 and 416.963. Roy has a two-year college education and possesses transferable skills from skilled work previously performed. (Tr. 21 and 316).

Utilizing Rule 202.18 of the Medical Vocational Guidelines and the testimony of the VE, the ALJ determined that Roy was not disabled. (Tr. 21 and 317). The VE testified that there are a significant number of sedentary unskilled jobs available in the national and regional economy. (Tr. 57 and 317). These sedentary unskilled jobs are positions with a sit/stand option, such as a cashier or telephone sales clerk. *Id.* 57-8. Due to the abundance of jobs which meet Roy's RFC, the ALJ entered a finding of "not disabled." (Tr. 317).

Roy argues that the ALJ failed to consider her symptoms and complaints of non-exertional limitations, failed to give proper weight to her treating physicians' opinions and failed to consider the side effects from medications. *See* Plaintiff's Brief at 1. As part of the assessment of an individual's RFC, an ALJ must consider the impacts of an individual's symptoms and evaluate the credibility of their limitations. Defendant submits, and the Court agrees, that the ALJ discharged this duty without error.

The ALJ reviewed Roy's allegations of dizziness and foot swelling related to hyperthyroidism (Tr. 315). The ALJ noted that while Roy had some limitations from hyperthyroidism, the only treatment that she required was medication (Tr. 315). The ALJ further noted that no indication of

ongoing symptoms existed (Tr. 315-316).  Dr. Gorman's office note of April 3, 2004, is the only notation of dizziness while walking and standing.  Defendant argues, and the Court agrees, that this isolated comment does not prevail against the totality of the medical evidence, which indicates Roy's hyperthyroidism symptoms could be resolved with medication.

Roy further argues that the ALJ erred in not considering the side effects of her medication. *See* Plaintiff's Brief at 5.  The Defendant argues that while the standards for reviewing an individual's subjective allegations do include a consideration of medication side effects, that is only applicable where the medical records show that these side effects caused limitations. In the instant case, Roy's medical records do not indicate that she had any adverse side effects from her medication. Defendant further points out that Roy does not actually highlight specific side effects. At the hearing before the ALJ, Roy failed to assert that her medications caused side effects that might affect her ability to perform work related tasks (Tr. 382-404).

Plaintiff further asserts that the ALJ erred in not giving considerable weight to Dr. Gorman's assessment. *See* Plaintiff's Brief at 5.  The Defendant argues that the treatment note of April 3, 2003 is not an opinion within the meaning of the Commissioner's regulations.  Defendant argues that if this Court considers this office note to be an opinion, it is countered by Dr. Gorman's later notes. Defendant notes that as late as February 5, 2004, Dr. Gorman found that Roy had a logical thought process and that she was cognitively appropriate (Tr.363). Dr. Gorman reiterated these findings on April 29, 2004 (Tr. 362).  Roy's subsequent treating physician, Dr. Aleem consistently found Roy to have a logical thought process, thought content within normal limits, and intact attention and concentration (Tr.225-240).  The Court finds that Dr. Gorman's later office notes and Dr. Aleem's treatment notes provide good cause for the ALJ to discount the probative value of the April 3, 2003

9

report.

This Court finds that the Defendant's decision that Roy had the residual functional capacity for a range of sedentary work which permitted her to perform a significant number of jobs is supported by substantial evidence and should be affirmed. Accordingly, this Court finds that Roy's Motion [12-1] for Reversal or in the Alternative, Motion to Remand should be denied and the decision of the Commissioner should be affirmed.

## CONCLUSION

The court has fully reviewed the entire record on this matter and finds that the Commissioner did not err as a matter of law in reaching the "final decision" in this matter and that the decision is supported by substantial evidence. Accordingly, the Court recommends that the decision of the Commissioner is supported by substantial evidence and should be affirmed. The Court further finds that Roy's Motion [12-1] for Reversal or in the Alternative, Motion to Remand should be denied.

In accordance with the Rules of this Court, any party within ten days after being served a copy of this recommendation, may serve and file written objection to the recommendations, with a copy to the Judge, the U.S. Magistrate Judge and the opposing party. The District Judge at that time may accept, reject or modify in whole or in part, the recommendation of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. Failure to timely file written objections to proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party, except on the grounds of plain error, from attacking on appeal- unobjected to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Services Automobile Association*, 79 F.3d 1425 (5th Cir. 1996).

THIS the   6th   day of September, 2007.

                      s/ JOHN M. ROPER
                      CHIEF UNITED STATES MAGISTRATE JUDGE